# First Department, May, 1984

## (May 1, 1984)

■ Maidgold Associates, Appellant, v City of New York, Respondent. — Order, Supreme Court, New York County (Richard Wallach, J.), entered February 4, 1983, granting defendant city's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 1, 7) and denying plaintiff's cross motion for summary judgment, affirmed for the reasons stated by Justice Wallach at Special Term, without costs. ¶ In the companion case to which the dissent refers, where we affirmed the order granting the city's motion for summary judgment (101 AD2d 1035), the dispositive issues were unrelated to the issues here, albeit both cases arise out of the same facts. That case did not turn on the use by the city agencies of the property involved after the lease was properly approved and the city agencies took possession and paid the rent accepted by the landlord. The questions there were the liability of the city for the alleged delay in obtaining approvals and the alleged damages sustained by the landlord in altering the premises. Concur — Carro, Asch and Fein, JJ.

Murphy, P. J., and Kupferman, J., dissent in a memorandum by Kupferman, J., as follows: We dissent and would modify the order to reinstate the complaint, and remand the matter for trial to determine factual issues regarding the legality of defendant-respondent's occupancy. ¶ The complaint charges that defendant-respondent, the City of New York, through its agency Housing Preservation and Development (HPD), is presently illegally occupying space leased from plaintiff-appellant Maidgold Associates on the seventh and ninth floors of 75 Maiden Lane in the Borough of Manhattan. ¶ In August, 1979, the Board of Estimate passed a resolution approving a lease between the city and Maidgold for the seventh, eighth and ninth floors of 75 Maiden Lane. That resolution directed that the leased premises would be "for use by the Mayor's

Office of Operations [Operations], or for such other office purposes as the Commissioner of General Services may direct". Section 67(1)-1.0 of the Administrative Code of the City of New York provides in pertinent part that "[w]ithout the consent of [the Board of Estimate], the premises leased shall not be used during the period of the lease for purposes other than those specified in such resolution." ¶ The original lease provided that the term would begin at such time as Operations or the Commissioner of General Services certified the occupancy of Operations, which subsequently declined to occupy the premises. Thereafter, Maidgold executed a lease modification agreement dated August 5, 1980, pursuant to which the eighth floor was eliminated from the demised premises, and HPD was substituted for Operations as the tenant. The modification agreement was never approved by the Board of Estimate. ¶ In a companion case, *Maidgold Assoc. v City of New York* (101 AD2d 1035), Maidgold sued the city and the Director of Leasing of the Office of General Services for damages resulting from the delay in occupancy occasioned by the refusal of Operations to take possession. The present action is brought to recover possession from HPD. ¶ In that companion case, the defendants-respondents served an amended answer which stated as a first defense that Maidgold could not maintain the action because Maidgold had not alleged that the Mayor had approved the HPD lease modification agreement, and that such approval was required by the Board of Estimate resolution dated August 16, 1979. ¶ The city cannot have it both ways, arguing in one case that the lease is invalid because the procedures for approval were not followed with the biblical exactitude of "a jot or a tittle", and in the other that the lease was validly approved. ¶ Accordingly, the matter should be remanded for trial to determine the legality of HPD's continued occupancy.